UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SALMA HUSSAIN,

                Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

**MEMORANDUM & ORDER**
22-CV-03880 (HG)

**HECTOR GONZALEZ**, United States District Judge:

Plaintiff Salma Hussain seeks review, pursuant to 42 U.S.C. § 1383(c)(3), of a final decision of the Commissioner of Social Security (the "Commissioner") that denied her application for supplemental security income. Both Plaintiff and the Commissioner have moved for judgment on the pleadings pursuant to Rule 12(c). *See* ECF Nos. 12, 13, 16-1, 18. For the reasons set forth below, the Court rejects Plaintiff's argument that there was insufficient evidence to find that she could perform full-time work despite severe mental impairments. Accordingly, the Court grants the Commissioner's motion for judgment on the pleadings, denies Plaintiff's motion, and dismisses Plaintiff's case.

## PROCEDURAL HISTORY

### I.    Plaintiff's Application for Benefits and the ALJ's First Decision

Plaintiff is a 44-year-old woman with a tenth-grade education and no relevant work history. ECF No. 16-1 at 2; ECF No. 10 at 153, 693, 1031.[1] On April 26, 2016, she filed an

---

[1] All citations to the parties' memoranda of law in support of their motions for judgment on the pleadings refer to the internal pagination in those documents. *See* ECF Nos. 13, 16-1, 18. The citations to all other sources in the record refer to the pagination created by the Court's ECF filing system. *See* ECF No. 10.

application for supplemental security income ("SSI"), alleging mental health impairments, including major depressive disorder, dating back to May 27, 2010. The Social Security Administration (the "Administration") denied Plaintiff's application on September 30, 2016, having found that her reported conditions were not severe enough to keep her from working. ECF No. 10 at 70. Plaintiff thereafter filed a written request for a hearing before an Administrative Law Judge ("ALJ"). *Id.* at 78–79, 82.

On June 27, 2018, a hearing was held before the ALJ. ECF No. 10 at 32–50. Plaintiff testified with the aid of a Bengali interpreter, stating that she was unable to work due to mood swings and getting angry. *Id.* at 21–22, 41–42. The ALJ asked Plaintiff about the numerous medications she took for depression and other psychiatric symptoms, and she testified that the medications were helping her and did not cause any side effects. *Id.* at 21–22, 43–45. Plaintiff stated that she had been having trouble since her father died in 2015 but was able to maintain daily activities such as cooking and cleaning, attending group gardening sessions and ESL classes, and spending time talking with friends and family members. *Id.* An impartial vocational expert was also present at the hearing but did not testify.

At the time the ALJ rendered this decision, the record contained two "medical source statements" from Plaintiff's treating psychiatrist, Dr. Delia Jano, wherein the doctor opined that Plaintiff's mental impairments would cause marked to extreme limitations in every functional area and she would be likely to miss three or more days of work per month as a result. These opinions were also signed by Plaintiff's therapist, Jacqln Odle, LMSW. Additional non-treating medical opinions were provided in an August 2016 consultative examination report by independent psychologist Dr. W. Amory Carr and a September 2016 Medically Determinable Impairments and Severity ("MDI") report by Administration psychiatric consultant Dr. E. Gagan. ECF No. 10 at 51–59, 572–75 (Exhibits 1A, 8F). Some of Plaintiff's treatment records

2

from Woodhull Medical and Mental Health Center ("Woodhull Hospital"), spanning May 2010 to June 2018, were also considered by the ALJ.  Notably, however, these medical records were devoid of any treatment notes from Dr. Jano or Ms. Odle.

The ALJ found that Plaintiff's schizoaffective, major depressive, and panic disorders were severe, *see* 20 C.F.R. § 416.920(c), but ultimately concluded that Plaintiff was not disabled within the meaning of the Social Security Act.  ECF No. 10 at 16–27.  He determined that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but was restricted to the non-exertional limitation of "performing simple and repetitive tasks in a routine work setting." *Id.* at 21.  In coming to this decision, the ALJ afforded little weight to the medical opinion of treating physician Dr. Jano and "some weight" to the consultative evaluation of Dr. Carr, who both concluded that Plaintiff had significant limitations which would interfere with her ability to function on a daily basis.  *Id.* at 22, 24–25.  On the other hand, the ALJ gave great weight to Dr. Gagan's opinion in the MDI report, stating that it was most consistent with the other evidence, including Plaintiff's testimony.  *Id.* at 24–25.

Plaintiff filed an appeal, which the Appeals Council denied on March 18, 2019.  She thereafter sought review in this District.  *See* 42 U.S.C. § 405(g).  The parties jointly stipulated to remanding the case to the Commissioner of Social Security.  ECF No. 10 at 763–65.  On April 14, 2020, the Appeals Council remanded the case to the ALJ because the initial decision was based on an undeveloped record.  Specifically, the Appeals Council found that the record contained insufficient evidence of Plaintiff's mental impairments because her medical and psychiatric treatment records were incomplete and, consequently, the decision did not contain an adequate evaluation of the treating and non-treating source opinions. *Id.* at 768–71.

3

## II.     Supplemental Administrative Hearings and ALJ's Second Decision

Upon remand, this matter was reassigned to the same ALJ, who was directed by the Appeals Council to complete the administrative record by obtaining Plaintiff's medical records from Woodhull Hospital's outpatient mental health clinic, including any treatment notes from her treating psychiatrist and therapists.  ECF No. 10 at 770.  Between July 2021 and February 2022, the ALJ held three supplemental hearings and acquired extensive psychiatric treatment records from all of Plaintiff's known treatment providers to complete the record.  *Id.* at 676.  The expanded record included two new medical source statements from Dr. Jano, which largely came to the same conclusions as her earlier opinions, along with extensive treatment notes from Dr. Jano, Ms. Odle, and other healthcare providers who treated Plaintiff at Woodhull Hospital between February 2015 and December 2021.  The supplemental hearings produced testimony from impartial psychological medical expert witness, Dr. Billings S. Fuess; a vocational expert; and Plaintiff herself.

### A.     *Relevant Supplemental Hearing Testimony*

Dr. Fuess testified at all three supplemental hearings, after having reviewed the entire record and then examining all additional medical evidence as it became available between hearings.  He explained that Plaintiff did have major depressive disorder with psychotic features but opined that her mental impairments did not meet or medically equal any psychiatric listing.  While Plaintiff's condition did meet the "Paragraph A" criteria of listing 12.04 (depressive, bipolar, and related disorders), Dr. Fuess stated that he found no evidence in the record to support a finding of marked limitation of any "Paragraph B" criteria.[2]  Instead, Dr. Fuess

---

[2]     To evaluate the severity of a claimant's mental impairment, the ALJ rates the claimant's degree of functional limitation in four broad functional areas:  (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  20 C.F.R. § 416.920a(c)(3).  These four functional

4

concluded that Plaintiff had only moderate limitations in understanding, remembering, and applying information; interacting with others; concentrating, persisting, or maintaining pace; and in adapting or managing oneself.  ECF No. 10 at 710–16.  Even as additional treatment notes and other medical evidence became available, Dr. Fuess's opinion never changed.

These conclusions were in stark contrast to the medical opinions of Dr. Jano and Dr. Carr who both believed that Plaintiff was markedly to extremely limited in almost every area.  Dr. Fuess, having reviewed these medical opinions, testified that they were not supported by the record, particularly where the contemporaneous treatment notes made by Dr. Jano while examining Plaintiff did not support the doctor's own opinions.  ECF No. 10 at 715–16.  Ultimately, Dr. Fuess concluded that Plaintiff would have trouble understanding complex instructions, adapting to frequent changes in the workplace, and working with or reacting to critical supervisors.  The doctor thus opined that she should be limited to simple, repetitive, and routine tasks; only have occasional interactions with the public; and should not be exposed to negative supervisors.  Even considering these limitations, Dr. Fuess stated that Plaintiff would be able to attend work on a regular basis.  *Id.* at 744–47.

The vocational expert ("VE") testified at the final hearing on February 7, 2022, and provided additional written post-hearing testimony via an interrogatory from the ALJ.  *See* ECF No. 10 at 1088–91 (Exhibit 37E).  Because Plaintiff has no relevant work history, the ALJ asked the VE to consider a hypothetical individual of the Plaintiff's age, education, and past work experience.  This hypothetical person could perform at all exertional levels but could understand and carry out only short, simple instructions; only occasionally interact with the public and

---

areas are known as the "paragraph B" criteria.  20 C.F.R. § 404, Subpt. P, App. 1.  Each functional area is rated on a five-point scale of:  "[n]one, mild, moderate, marked, and extreme."  20 C.F.R. § 416.920a(c)(4).

supervisors; and could tolerate occasional changes in a routine work setting where they were limited to making only simple work-related decisions.  ECF No. 10 at 755–56.  The VE testified that such an individual could perform unskilled jobs such as machine packager, floor waxer, or housekeeper, and that in such circumstances, employers would only tolerate no more than one absence per month after a probationary period and no more than 12% off-task behavior during a workday.  *Id.*

Plaintiff also testified in February 2022 with the aid of a Bengali interpreter.  She said that she was anxious and had trouble socializing or doing household chores without the help of her son.  She also said that she was nervous to take public transportation by herself and relied on her husband and son to help her travel between Buffalo and Brooklyn for doctor's appointments.  Plaintiff testified that she often heard voices, saw things that were not there, and felt like someone wanted to kill her.  She continued to meet with her psychiatrist every two months, and the medications she was taking made her feel "okay."  ECF No. 10 at 748–52.

### B.  The ALJ's Decision

The ALJ issued a decision on April 22, 2022, once again concluding that Plaintiff was not disabled, and thereby affirming the denial of her benefits.  ECF No. 10 at 675.  As required by regulation, the ALJ's decision followed a five-step process to assess Plaintiff's alleged disability.  Under this five-step process, the Commissioner determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe [physical or mental] impairment, or combination of impairments; (3) whether the impairment [or combination] meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of [her] past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

6

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing 20 C.F.R. § 416.920(a)(4)(i)–(v)).[3] "The claimant has the general burden of proving that he or she has a disability within the meaning of the Act, and bears the burden of proving his or her case at steps one through four." *Id.*  In step five, the burden shifts "to the Commissioner to show there is other work that the claimant can perform." *Id.*

The ALJ followed this five-step process by first concluding that Plaintiff had not engaged in any substantial gainful activity since she filed the application on April 26, 2016. EFC No. 10 at 679.  At the second step, the ALJ indicated that Plaintiff's mental impairments were well-documented in her outpatient psychiatric treatment records and psychological consultative evaluation, and concluded that Plaintiff's major depressive, schizoaffective, and anxiety disorders "constitute severe impairments" under 20 C.F.R. § 416.909.  *Id.*  While the treatment record and medical file indicated the presence of some physical diagnoses—including diabetes mellitus, gastroesophageal reflux disease (GERD), vitamin D deficiency, and mild lumbar spondylosis—the ALJ found that they had not produced "any significant or ongoing symptomology" which persisted for the minimum duration of twelve months.  *Id.* at 679–80.  He therefore concluded that any physical impairments suffered by Plaintiff were not severe.  *Id.* at 680 (citing 20 C.F.R. § 416.922).

At step three, the ALJ considered Plaintiff's severe mental impairments and concluded that they did not rise to the level of severity of any one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.* at 681.  The ALJ considered listings 12.03 (schizophrenia spectrum and other psychotic disorders), 12.04 (depressive, bipolar, and related disorders), and 12.06 (anxiety and obsessive-compulsive disorders) and found that Plaintiff's "mental

---

[3]    Unless noted, case law quotations in this order accept all alterations and omit internal quotation marks, citations, and footnotes.

7

impairments, considered singly and in combination, do not meet or medically equal the criteria" listed therein. *Id.*

When making this determination, the ALJ considered the "Paragraph B" criteria found in 20 C.F.R. § 416.920a(c)(3), and determined that Plaintiff had moderate limitations in understanding, remembering or applying information; interacting with others; and concentrating, persisting or maintaining pace; and a mild limitation in adapting or managing oneself. *Id.* at 681–82. The ALJ also found that the "Paragraph C" criteria were not satisfied because, "[r]egarding Listings 12.03C, 12.04C, and 12.06C, [Plaintiff] does not have a 'serious and persistent' mental disorder over a period of at least two years showing that she receives either medical treatment, mental health therapy, psychosocial supports, or a highly structured setting, that is ongoing and diminishes the symptoms and signs of her mental disorder. Further, the record does not show that she has a minimal capacity to adapt to changes in her environment, or to demands that are not already part of her daily life." *Id.*

The ALJ next assessed Plaintiff's RFC, determining that she was able to perform a full range of work at all exertional levels but with some non-exertional limits. ECF No. 10 at 682. With respect to Plaintiff's mental impairments, the ALJ imposed the following restrictions: understanding, remembering, or carrying out only short and simple instructions; only occasional interactions with the public or supervisors; and tolerating only occasional changes in routine work setting and making judgments on simple work-related decisions. *Id.* at 686–87. In reaching this conclusion, the ALJ gave great weight to the opinion of Dr. Fuess, as described above, because he was the only medical professional to review the entire record, his testimony was consistent across all three hearings, and he was able to cite specific evidence in the record which supported his conclusion—particularly where there were discrepancies between Plaintiff's treatment notes and other medical opinions. The ALJ determined that Dr. Fuess's opinion was

8

most strongly supported by the voluminous psychiatric treatment records. *Id.* at 691–92. On the other hand, the ALJ gave little weight to the opinion of Dr. Jano because her conclusion that Plaintiff has extremely limited function and thus should be subject to a higher degree of restriction was inconsistent with the record, including her own treatment notes, other professional medical opinions, and the objective medical evidence on file. *Id.* at 690–91. Upon consideration of the entire record, the ALJ did not change the weight that he had previously assigned to the remaining medical opinions provided by Dr. Carr and Dr. Gagan. *Id.* at 689.

At step four, the ALJ concluded that Plaintiff had no past relevant work history as defined by 20 C.F.R. § 416.965. Earning records generated prior to the February 2022 supplemental hearing indicated that Plaintiff had not performed any substantial gainful work activity in the preceding fifteen years. ECF No. 10 at 693. The ALJ thus proceeded to step five and found that Plaintiff could perform jobs available in the national economy based on her age, education, work experience, and RFC. *Id.* Because Plaintiff is only subject to non-exertional limitations, the ALJ consulted section 204.00 of the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, to guide his decision-making at this step. The ALJ also relied on the vocational expert's testimony regarding the types of jobs Plaintiff could perform with her non-exertional limitations and the approximate number of such jobs available in the national economy. *Id.* at 693–94, 1088–91.

## STANDARD OF REVIEW

Unsuccessful claimants for disability benefits under the Social Security Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). In evaluating a determination by the Commissioner, "[t]he relevant inquiry is whether the ALJ applied the correct legal standards and

9

whether the ALJ's determination is supported by substantial evidence." *Rucker v. Kijakazi*, 48 F.4th 86, 90–91 (2d Cir. 2022).

"The substantial evidence standard is a very deferential standard of review—even more so than the clearly erroneous standard." *Schillo v. Kijakazi*, 31 F.4th 64, 74 (2d Cir. 2022). But the standard is "not merely hortatory: It requires relevant evidence which would lead a reasonable mind to concur in the ALJ's factual determinations." *Colgan v. Kijakazi*, 22 F.4th 353, 359 (2d Cir. 2022). The Court is therefore "required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Schillo*, 31 F.4th at 74. Once an ALJ has made findings of fact, however, the Court "can reject those facts only if a reasonable factfinder would *have to conclude otherwise.*" *Id.* (emphasis in original). Put another way, "[i]f evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *Id.* Although an ALJ is not required to "reconcile[ ]" "every conflict in [the] record," the ALJ must describe "the crucial factors in any determination . . . with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019).

## **DISCUSSION**

Plaintiff contends that the ALJ committed reversible error when he found that Plaintiff is capable of performing full-time work despite her mental impairments. ECF No. 13 at 15. Specifically, Plaintiff argues that the ALJ failed to: (1) accord controlling weight to her treating physician's opinions when assessing her RFC; (2) "consider the amount of Plaintiff's monthly absences"; and (3) properly consider the Paragraph B criteria of Listing 12.03, 12.04, and 12.06. *Id.* at 16, 22, 24; *see generally* ECF No. 18. For the reasons discussed below, the Court finds

10

that the ALJ did not err in these assessments and therefore grants the Commissioner's cross-motion for summary judgment on the pleadings.

The initial ALJ decision was remanded because it did not adequately evaluate the opinions of the treating and non-treating physicians. ECF No. 10 at 768–69. This was partially due to the incomplete record, which did not contain treating physician Dr. Jano's treatment notes. *Id.* Since the remand, the ALJ held three supplemental hearings and fully developed the record with additional opinion and objective medical evidence including: (i) the testimony of psychological medical expert Dr. Fuess and the VE; (ii) Plaintiff's complete psychiatric treatment records from Woodhull Medical Center; (iii) treatment notes and two additional medical source statements from Dr. Jano; and (iv) treatment notes from Plaintiff's therapist, Jacqln Odle, LMSW. ECF No. 10 at 676–77 (citing Exhibits 12F, 14F, 16F, 18F, 20F–23F).

## I. The ALJ Properly Applied the Treating Physician Rule

Upon review of the now-complete record, the ALJ once again assigned little weight to the medical opinions of Dr. Jano. Plaintiff now claims that this determination was an improper application of the "treating physician rule," which was in place at the time she applied for disability benefits.[4] Under this rule, "[t]he medical opinion of a treating physician or psychologist will be given 'controlling' weight if that opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.'" *Coleson v. Comm'r of Soc. Sec.*, No. 18-cv-2862, 2020 WL 1989280, at *6 (E.D.N.Y. Apr. 26, 2020) (quoting 20 C.F.R. § 416.927(c)(2)); *see also Colgan*,

---

[4] The Administration promulgated new regulations in January 2017 that "no longer apply the treating physician rule," but the rule continues to apply to applications for benefits that, like Plaintiff's, were submitted before March 27, 2017. *Schillo*, 31 F.4th at 71 n.1; *see* 20 C.F.R. § 416.927.

22 F.4th at 359–60 (describing same rule as articulated in 20 C.F.R. § 404.1527(c)(2)). "[T]he ALJ must articulate good reasons to rebut the presumption of controlling deference conferred on the treating physician's opinion." *Colgan*, 22 F.4th at 360. The regulations enumerate several factors that may guide an ALJ's determination of what weight to give a treating source opinion: "(1) the length, frequency, nature, and extent of the treating relationship, (2) the supportability of the treating source opinion, (3) the consistency of the opinion with the rest of the record, (4) the specialization of the treating physician, and (5) any other relevant factors." *Coleson*, 2020 WL 1989280, at *6 (quoting 20 C.F.R. § 416.927(c)(2)–(6)).[5] This Court finds that the ALJ's decision to discount Dr. Jano's opinion was consistent with the treating physician rule, and his "good reasons" for doing so are supported by substantial evidence.

Plaintiff contends that the ALJ did not consider all the factors when evaluating Dr. Jano's opinion, particularly her expertise and extensive treating relationship with Plaintiff. ECF No. 13 at 25. To the contrary, the ALJ did address the factors and reasonably determined that Dr. Jano's conclusions, in the aggregate, were not entitled to controlling weight. *See* ECF No. 10 at 690–91. He acknowledged that some factors tended to favor giving greater weight to Plaintiff's treating physician, "considering that [Dr. Jano] has been the claimant's treating psychiatrist since even prior to the application date[], and that all of her various opinions are consistent with one another." *See id.* at 690 (citing Exhibit 1F). Even so, the ALJ determined that Dr. Jano's conclusion that Plaintiff has significant, persistent ongoing symptoms—including hallucinations

---

[5] These factors are to be applied when evaluating every available medical opinion when less-than-controlling weight is given to a treating physician's opinion. *See* 20 C.F.R. § 416.927(c) ("Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's medical opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion."); 20 C.F.R. § 404.1527(c) (same).

12

and the inability to interact with others—and thus is severely limited in her ability to function, was not consistent with nor supported by the record as a whole. The ALJ pointed out that Dr. Jano's conclusions were inconsistent with her own notes and mental status examinations of Plaintiff, much less supported by the other objective evidence and medical opinions contained in the record, and the ALJ appropriately discounted Dr. Jano's opinion due to the inconsistencies that were observed.[6] *Id.* at 690–91. *See Cichocki v. Astrue*, 534 F. App'x 71, 74–75 (2d Cir. 2013) (noting the ALJ did not need to afford treating source's opinion controlling weight because it conflicted with source's own treatment notes); *Monroe v. Comm'r Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (same).

Furthermore, the ALJ's decisions to ascribe weight to the remaining non-treating source opinions are also supported by substantial evidence. Dr. Fuess's opinion was assigned great weight for the reasons explained above. The opinion of Dr. Gagan, as articulated in the September 2016 MDI report, was also accorded great weight while consultative examiner Dr. Carr's August 2016 opinion was once again given less weight. The ALJ acknowledged that Dr. Gagan did not evaluate Plaintiff and reviewed the record only to the extent it existed in 2016, but nevertheless determined that Dr. Gagan's opinion that Plaintiff is mildly to moderately limited in the "Paragraph B" factors was supported by the extensive medical evidence contained in the expanded record. The ALJ gave little weight to the opinion of Dr. Carr, a one-time evaluating physician who did not review the entire record, where the evidence in the expanded record did

---

[6] For example, the treatment notes repeatedly indicate that Plaintiff does have the ability to interact with others (travel, attend ESL classes, etc.), and when hallucinations do seem to happen, she is able to ignore or otherwise disregard them. On the other hand, Dr. Jano's opinions in her medical source statements describe Plaintiff as having significant and persistent ongoing symptoms, including hallucinations and the inability to interact with others. *See, e.g.*, ECF No. 10 at 683–90.

13

"not support the same breadth or degree of limitations as recommended by Dr. Carr." ECF No. 10 at 689.

Although the ALJ did not explicitly describe each of the regulatory factors when assessing the totality of the non-treating source evidence, "[t]he ALJ need not undertake 'a slavish recitation of each and every factor,'" so long as his "reasoning and adherence to the regulation are clear." *Pesco v. Kijakazi*, No. 20-cv-1124, 2021 WL 4463228, at *4 (E.D.N.Y. Sept. 29, 2021) (quoting *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013)). The ALJ provided "good reasons" for his decision to give Dr. Jano's opinion little weight, and "a searching review of the record assures [the Court] that the substance of the treating physician rule" was not compromised. *Estrella*, 925 F.3d at 96.

## II.     The ALJ Considered Plaintiff's Monthly Absenteeism

Plaintiff further argues that the ALJ erred when he "failed to consider the amount of Plaintiff's monthly absences." ECF No. 13 at 22. She emphasizes how, in each of the medical source statements, Dr. Jano opined that Plaintiff on average would be absent from work three times a month due to her impairments and Dr. Carr concluded that Plaintiff would be limited in her ability to maintain a regular schedule. ECF No. 13 at 22–23. For the reasons discussed above, however, the ALJ properly assigned these medical opinions little weight. *See Mota v. Comm'r of Soc. Sec.*, No. 20-cv-7294, 2022 WL 464098, at *11 (S.D.N.Y. Feb. 15, 2022) (finding no issue with ALJ's consideration of plaintiff's potential absences when two medical opinions concluding plaintiff would be absent more than once a month properly were found unpersuasive).

The ALJ was entitled to give more weight to the opinion of Dr. Fuess, who found moderate limitations in Plaintiff's attention and concentration, and concluded that she should be restricted to simple, routine, and repetitive tasks. ECF No. 10 at 746–47. When considering this

14

restriction alongside the medical evidence, including Plaintiff's extensive psychiatric treatment notes and mental status examinations, Dr. Fuess opined that she could stay on task and would be able to regularly attend assigned workdays. ECF No. 10 at 692, 746–47. The ALJ acknowledged how the different medical opinions regarded potential absences and acted within his discretion to resolve the conflicts therein.[7] *See Perozzi v. Berryhill*, 287 F. Supp. 3d 471, 492 (S.D.N.Y. 2018) (ALJ properly could conclude one physician's findings were inconsistent with those of other physicians, and it "was within the ALJ's discretion to resolve such conflicts between medical opinions in the manner he did"). Where, as here, substantial evidence supports the ALJ's determination, this Court may not re-weigh the evidence. *See McIntyre*, 758 F.3d at 149 ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."); *Rivera v. Comm'r Soc. Sec.*, 368 F. Supp. 3d 626, 642 (S.D.N.Y. 2019) ("[T]he reviewing court's task is limited to determining whether substantial evidence exists to support the ALJ's fact-finding; it may not reweigh that evidence or substitute its judgment for that of the ALJ where the evidence is susceptible of more than one interpretation."); *Pichardo v. Comm'r Soc. Sec.*, No. 21-cv-6873, 2023 WL 2596970, at *19 (S.D.N.Y. Mar. 22, 2023) (rejecting plaintiff's argument that ALJ failed to consider time off-task or absenteeism where the ALJ's RFC determination was supported by substantial evidence); *Schillo*, 31 F.4th at 74.

---

[7] Accordingly, Plaintiff's reliance on cases where the ALJ did not address evidence of absenteeism is misplaced. *See, e.g.*, *Guzman v. Comm'r Soc. Sec.*, No. 20-cv-7420, 2022 WL 2325908, *10 (S.D.N.Y. June 10, 2022), *report and recommendation adopted*, 2022 WL 2316643 (S.D.N.Y. June 28, 2022) ("ALJ's failure to address the issue of how much time Plaintiff would miss in a month based on his ailments, and the VE's testimony that only one absence a month would be tolerated, was legal error.").

### III. The ALJ Properly Considered the "Paragraph B" Criteria

Finally, Plaintiff argues that the ALJ's RFC assessment was inconsistent with his determination that, under the "paragraph B" criteria, she has a moderate limitation in adapting and managing herself, and that the hypothetical considered by the VE failed to account for this limitation. ECF No. 13 at 24–25. As the Commissioner points out, "paragraph B" criteria are not necessarily the same as an RFC assessment. *See* ECF No. 16-1 at 25. The ALJ's decision also made this clear:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental functional analysis.

ECF No. 10 at 682. *See Zacharopoulos v. Saul*, 516 F. Supp. 3d 211, 233 (E.D.N.Y. 2021) (citing *Chappell v. Comm'r Soc. Sec.*, No. 18-cv-1384, 2020 WL 1921222, *4–6 (W.D.N.Y. Apr. 21, 2020)).[8] Moreover, it is not improper for an ALJ to consider the same information which led to finding a moderate limitation under "Paragraph B" criteria and conclude that a claimant's functional capacity is not impaired by that moderate limitation. *Reeves v. Comm'r of Soc. Sec.*, No. 19-cv-775S, 2020 WL 4696589, *3 (W.D.N.Y. Aug. 13, 2020); *see also Poole v. Saul*, 462 F. Supp. 3d 137, 162 (D. Conn. 2020) ("[T]o the extent Plaintiff contends that the ALJ

---

[8] Social Security Ruling ("SSR") 96-8p states the Administration's policies and policy interpretations regarding the RFC assessment in an initial claim for disability benefits. SSR No. 96-8p, 1996 WL 374184, at *1 (1996). Therein, the Administration specifically notes that "the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." *Id.* at *4. It goes on to distinguish this rating process from the "more detailed" mental RFC assessment used at steps 4 and 5. *Id.*

16

was required to expressly include the moderate limitations (in concentration, persistence and pace) identified at Step 3 in the RFC determination, such argument lacks merit because the ALJ's findings at step 3 of the sequential analysis are not an RFC determination . . . ."). But here, the ALJ's RFC assessment did reflect the degree of limitation found in his "Paragraph B" analysis.

As explained in more detail above, Plaintiff's RFC designation included non-exertional limitations that restricted her to understanding, remembering, and carrying out short, simple instructions; occasional interaction with the public and supervisors; only occasional changes to a routine work setting; and making judgment calls only on simple work-related decisions. ECF No. 10 at 682. In placing these restrictions, the ALJ accounted for the moderate limitation in Plaintiff's ability to adapt and manage herself. *See Platt v. Comm'r Soc. Sec.*, 588 F. Supp. 3d 412, 422 (S.D.N.Y. 2022) ("Limitations in work complexity and in interpersonal interaction are often imposed to address a claimant's limitations in adaptive categories of functioning.").

Additionally, when taken in conjunction with her lack of work history, the application of these restrictions led the VE to conclude that a hypothetical individual of Plaintiff's same age, education, work history, and RFC could perform unskilled work that exists in significant numbers in the national economy. ECF No. 10 at 688. The ALJ's view of the record and weighing of the evidence was not unreasonable, particularly where "[t]he Second Circuit has repeatedly held that moderate limitations do not preclude a plaintiff's ability to perform unskilled work." *Patterson v. Comm'r Soc. Sec.*, No. 18-cv-556, 2019 WL 4573752, *4 (W.D.N.Y. Sept. 20, 2019) (citing *McIntyre*, 758 F.3d at 149); *see, e.g.*, *Matta v. Astrue*, 508 F. App'x. 53, 55 (2d Cir. 2013) (affirming decision where "[t]he ALJ found that plaintiff had moderate difficulties in concentration, persistence and pace and moderate difficulties in social functioning that limit[ed] him to simple, routine, low-stress, and unskilled tasks, which involve no more than minimal

17

contact with co-workers, supervisors and the general public."); *Whipple v. Astrue*, 479 F. App'x 367, 370–71 (2d Cir. 2012) (holding that consultative examiners' findings that plaintiff's depression caused moderate limitations in social functioning ultimately supported ALJ's determination that plaintiff was capable of performing work that involved simple tasks and allowed for low-stress environment); *see also Platt*, 588 F. Supp. 3d at 422 (finding that RFC limiting plaintiff to "simple routine work" with only occasional and superficial interaction with general public and coworkers sufficiently accounted for moderate limitations in adjusting and managing oneself); *Hill v. Comm'r Soc. Sec.*, No. 18-cv-1161, 2020 WL 836386, *4–5 (W.D.N.Y. Feb. 20, 2020) (finding that claimant's marked limitations in ability to adapt and manage himself were addressed by limitation to simple and routine tasks, simple work-related decisions, and only occasional interaction with others).

## **CONCLUSION**

In considering the record as a whole, it is clear that the ALJ's opinion is amply supported by substantial evidence. For the foregoing reasons, the Court DENIES Plaintiff's motion for judgment on the pleadings, *see* ECF No. 12, and GRANTS the Commissioner's cross-motion for judgment on the pleadings, *see* ECF No. 16. The Clerk of Court is respectfully directed to enter judgment and to close this case.

SO ORDERED.

    */s/ Hector Gonzalez*
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
      November 26, 2023